No. 7335.

## BROOKS *v.* DOXEY ET AL.

72   327
154   318

72   327
167   551

INTERPLEADER.—*Parties to Appeal.*—*Practice.*—Where A. and B. interplead to recover the possession of money paid into court by a third person, and the money is awarded A. by the judgment of the court, B. may appeal from such judgment to the Supreme Court, although he is not named therein.

SAME.—*Practice.*—*Submission.*—*Waiver.*—Where a cause has been submitted to the Supreme Court by agreement, on an assignment of error, calling in question a ruling upon a motion for a new trial, such submission is a waiver of all objections to any alleged defect of parties to the appeal.

PRINCIPAL AND AGENT.—*Parties to Actions.*—*Practice.*—Where a factor sells goods in his own name, and without notice to the purchaser that he is not the principal, the latter may sue the purchaser for the price of the goods, though the agent might sue therefor in the absence of any claim by the principal.

From the Madison Circuit Court.

*A. W. Thomas* and *J. W. Sansberry*, for appellant.

*M. S. Robinson* and *J. W. Lovett*, for appellees.

WORDEN, J.—Peter Brooks sued David W. Campbell in the court below for the price of a quantity of potatoes sold and delivered. On April 28th, 1877, Charles T. Doxey sued Hayman & Co. before the mayor of Anderson on an account, and process of garnishment was issued against Campbell, on the alleged ground that he was indebted to Hayman & Co.; and such proceedings were had in that behalf as that judgment was rendered in favor of Doxey against Campbell as such garnishee. The latter case went by appeal to the circuit court, where, by agreement of the parties, it was consolidated with the action of Brooks *v.* Campbell.

In the circuit court Campbell filed his complaint of interpleader, conceding that he was indebted to either Brooks or Hayman & Co. for the amount of the potatoes, $173.86, and brought the amount into court, and asked that Brooks and Doxey be required to interplead in order that their respective claims to the money might be settled. Accord-

ingly, Brooks and Doxey interpleaded, and formed issues in respect thereto which were tried by a jury, who returned the following verdict, viz. :

"We, the jury, find for Charles T. Doxey; that Stephen B. Hayman and Charles T. Hayman" (Hayman & Co.) "are indebted to said Charles T. Doxey in the sum of one hundred and forty-nine dollars and seventy-five cents; and that said David W. Campbell is indebted to said Stephen B. Hayman and Charles T. Hayman in the sum of one hundred and seventy-three dollars and eighty-six cents."

Brooks moved for a new trial upon the ground, among other things, that the verdict was contrary to law and the evidence; but the motion was overruled, and exception.

The court rendered judgment that the claim of Doxey against Hayman & Co., and the costs of suit, be paid out of the money thus brought into court by Campbell.

Errors are assigned in the name of Brooks only as appellant, against Doxey, Campbell and the two Haymans, as appellees, pointing out as one of the errors the overruling of the motion for a new trial.

Before proceeding to consider the question involved in the error assigned, we may dispose of a motion made by the appellee Doxey to set aside the submission and dismiss the appeal. This motion is made upon the assumed ground that there was no judgment against Brooks; hence, that he could not appeal. There is nothing in this point. Brooks may not have been named in the judgment, but it was as much against him as if he had been specially named, inasmuch as it appropriated the money deposited by Campbell to the payment of the debt due from Hayman & Co. to Doxey, and not to the payment of the debt due, if there was one, from Campbell to Brooks.

It is also insisted that the Haymans should have been made appellants instead of appellees; but it is a sufficient answer to this objection, if it has any foundation at all, to

Brooks *v.* Doxey *et al.*

say, that the case was submitted by agreement on the assign-
ment of error as made; and this was a waiver of the sup-
posed objection.

We come to the motion for a new trial, and are of opin-
ion that the verdict was contrary to law as applied to the
facts in the case.

We think it clear on the facts that Campbell owed Brooks,
and not Hayman & Co., for the potatoes, and that the mon-
ey brought into court by Campbell ought to have been ap-
plied to the payment of his debt to Brooks.

The material facts in the case were, that Campbell was a
dealer doing business at Anderson, Indiana, and Brooks and
Hayman & Co. were doing business at Cincinnati. After
some correspondence between Campbell and Hayman & Co.,
Campbell, on April 26th, 1877, ordered from Hayman &
Co., by telegram, the potatoes in question. Hayman & Co.,
being commission merchants and brokers, and not having
the potatoes of their own, went to Brooks, who had pota-
toes, and who, upon examining Campbell's references, con-
cluded to fill the order, and accordingly he shipped the pota-
toes to Campbell, on the same day, in the name of Hayman
& Co. as consignors: but at the same time Hayman & Co.
made their draft on Campbell for the amount of the pota-
toes, payable to Brooks, at ten days. Hayman & Co. had
no interest in the potatoes, or in the transaction, otherwise
than as they got a commission from Brooks for the sale of
the potatoes. The draft was presented to Campbell on or
about the 30th of April, 1876, who declined to accept it on
account of the garnishment.

These are the controlling facts in the case, and on them
we think it clear that Hayman & Co. must be regarded as
the agents or factors of Brooks in effecting the sale of the
potatoes, although Campbell dealt with them as principals,
and not as agents. By filling the order which Hayman &
Co. received from Campbell for the potatoes, and paying

them their commission, he made the sale his own as fully as if Hayman & Co. had been acting in his name and as his agents.

Doubtless, as Brooks was not known to Campbell in the purchase of the potatoes, if the latter had paid Hayman & Co. for them, without any notice of the claim of Brooks, the payment would have been valid.

As between Hayman & Co. and Brooks, there is no ground, either at law or in equity, for holding that Hayman & Co., instead of Brooks, are entitled to recover for the potatoes, and Doxey, the attaching creditor of Hayman & Co., is in no better situation, in this respect, than Hayman & Co.

It is abundantly clear that where a factor sells goods in his own name, and without notice to the purchaser that he is not the principal, the latter may sue the purchaser for the price of the goods, though the agent might sue therefor in the absence of any claim by the principal. Thus, in Wharton on Agency & Agents, sec. 762, it is said: *"Principal may sue a vendee in his own name.*—This necessarily follows from what has been stated; and the suit may be either for the price of the goods, or for damages for non-performance of the contract. This right exists though the factor be himself entitled to sue on the contract; or though the vendee supposed the factor to be the real vendor, the true principal being unknown. This right, however, is subject to the equities which the vendee has acquired by dealing *bona fide* with the agent as principal, or which the agent may have acquired from the course of the dealing between him and the vendee."

In the case before us, there are no equities that interfere with the payment of the debt to Brooks, the principal. See, also, Story on Agency, 8th edition, secs. 402, 403. In the section last cited, it is said: "In the first place, then, the right of agents is subordinate to, and controllable by, their principals. Wherever the principal, as well as the agent, has

a right to maintain a suit upon any contract, made by the latter, he may generally supersede the right of the agent to sue, by suing in his own name.''

In Ewell's Evans on Agency, p. 525, it is said: ''It may be here mentioned that the right of the principal to sue is not affected by the fact that the agent also is entitled to sue, or that the principal was undisclosed when the contract was made, or that the agent acts under a *del credere* commission, or that the other contracting party dealt with the agent without notice of the existence of a principal.'' See, also, Dunlap's Paley's Agency, 4th Am. ed., p. 324.

The judgment below is reversed, with costs, and the cause remanded for a new trial.